794 A.2d 873 (2002)
350 N.J.Super 236
Thomas D. WILLIAMSON, Plaintiff-Appellant,
v.
TREASURER OF THE STATE OF NEW JERSEY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted March 18, 2002.
Decided April 16, 2002.
*874 Thomas D. Williamson, appellant pro se.
David Samson, Attorney General, attorney for respondent (Patrick DeAlmeida, Deputy Attorney General, of counsel; Marc Krefetz, Deputy Attorney General, on the brief).
Before Judges PETRELLA, STEINBERG and ALLEY.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
This appeal presents the issue of whether the information the State Treasurer receives from the Clerk of the Superior Court regarding funds deposited with the court, but unclaimed, and thereafter presumed abandoned and turned over to the State Treasurer, is required to be made available to the public either under the Right to Know Law, N.J.S.A. 47:1A-1 to -4[1] or the common law.[2] Plaintiff Thomas D. Williamson, an attorney, is involved in locating potential claimants to unclaimed property. He sought information from the State Treasurer relating to unclaimed property formerly held for ten years by the Clerk of the Superior Court as unclaimed monies deposited in connection with various lawsuits and then turned over to the State for safekeeping. Particularly, he sought information regarding the balances in each of the transferred account items and their source.
Prior to 1999, rather than personally seeking to inspect the records of owners of property held by the State, transferred from the court, Williamson would call the Office of the Administrator of Unclaimed Property (OAUP) in the State Department of the Treasury and request information over the telephone relating to accounts held by the OAUP that had been transferred to it by the Clerk of the Superior Court under court orders. In 1999, a Deputy Attorney General (DAG) told Williamson that he would no longer be entitled to receive free information on demand over the telephone from the OAUP and that the information was confidential and would not be disclosed in any form. This presumably would not include information available from the Treasury Department's website database which is generally accessed by telephone and modem or other access medium through the Internet.[3] The DAG told Williamson in a follow-up letter, dated January 7, 2000, that the information he sought pertaining to funds held for owners who did not make claims was confidential and would not be disclosed.
Williamson sought review of this determination. His first appeal was dismissed without prejudice based on a ruling that the DAG's letter was not a final agency determination. Williamson v. Treasurer *875 of the State of New Jersey, A-3291-99-T2. Certification was denied. 165 N.J. 678, 762 A.2d 659 (2000).
Williamson thereupon filed an action in lieu of a prerogative writ on February 24, 2001, seeking access to information deemed abandoned and transferred by the Clerk of the Superior Court to the State Treasurer.[4] Williamson moved for summary judgment and the Treasurer cross-moved to dismiss the complaint.
The Law Division Judge denied Williamson's motion for summary judgment and granted the Treasurer's motion to dismiss. The Law Division Judge also said that Williamson had no right to the information over the telephone and because the information sought was considered confidential in nature, he was also not entitled to it. Williamson appeals and argues that the information he seeks from the OAUP is not confidential and therefore constitutes public records subject to disclosure under the Right to Know Law.
The OAUP is an office in the State Department of the Treasury charged with the responsibility of maintaining records of abandoned property and handling claims for the return or payment of funds when persons become aware the funds are held by the State. N.J.S.A. 46:30B-1 to -109 (Uniform Unclaimed Property Act (UUPA)). The information OAUP maintains is now kept in electronic format on computers, although it used to be kept in paper format and there still may be hardcover backup. Presumably, the source of the information now in computer format has been retained and would be available, although the record is not clear on this point. The OAUP maintains a list of owners and last known addresses of people with potential claims to unclaimed property of its customers on a searchable Internet database (see footnote 3, supra) which may be viewed by anyone, but without listing the amount held or the source of the funds, and responds to written requests made on its prescribed claim forms (see N.J.S.A. 46:30B-77), with proof of identity or entitlement, from persons who can establish a claim of ownership to the property. The State's database presumably includes funds transferred from the Clerk of the Superior Court. The Internet searchable database purports to comply with the Right to Know Law as to funds received from the Clerk of the Superior Court, as well as other services, by listing only names and addresses, but not with the amount of funds held for each person listed or the source of those funds.

I.
Our holding in this appeal is limited to the issue Williamson raises, his right to information about funds transferred from the Clerk of the Superior Court to the OAUP.[5]
*876 We can take judicial notice of the fact that pleadings and other documents on file in the Superior Court are generally public records and that the orders in litigated matters regarding depositing funds with the Court Clerk, generally to abide the outcome of litigation, as well as orders transferring deposited funds deemed abandoned after ten years, are public records. See N.J.R.E. 201(b)(4) and (c). Likewise, we can take judicial notice of procedures in the Superior Court Clerk's office regarding posting notice of unclaimed funds.
All holders of unclaimed funds, or property "of the value of $25.00 or more" have an obligation to make annual reports to the OAUP concerning the nature of the abandoned property. N.J.S.A. 46:30B-47. A holder is any person, wherever organized or domiciled, who possesses the property of another, a trustee, or one indebted to another on an obligation. N.J.S.A. 46:30B-6(g). The Clerk of the Superior Court is a holder of such funds when depositors of funds with the Clerk (see e.g., R. 4:57-1) or claimants to funds fail or neglect to apply for the release of the funds for whatever reason, including death of a claimant, or lack of knowledge of the funds. See N.J.S.A. 46:30B-41.
Property held by the Clerk that remains unclaimed for a period of ten years is presumed to be abandoned. Ibid. Generally, the report from a holder must include the name, address, nature and identifying number or a description of the property, the Social Security number of the person appearing to be the owner, and any other information the OAUP may require. N.J.S.A. 46:30B-47.
Where the holder of unclaimed funds is the Clerk of the Court, or a surrogate, the report must contain the name of the case in which the deposit was made, the docket number, the date of deposit, the balance, the interest or income earned, and the total amount payable to the State Treasurer. N.J.S.A. 46:30B-47.1. Generally, "[n]ot more than 120 days before filing the report ... the holder in possession of property presumed abandoned ... shall send written notice to the apparent owner at his last known address informing him that the holder is in possession of property..." if its value is $50 or more. N.J.S.A. 46:30B-50. However, in lieu of the mailed notice required by N.J.S.A. 46:30B-50, "the Clerk of the Superior Court, not more than 120 days and not less than 90 days before the date" the report is presented "shall post in his office and in each county clerk's office where public notices are customarily posted, a notice" including the case name and docket number of each case in which funds have been deposited and presumed abandoned after the statutory period. N.J.S.A. 46:30B-50.1. The posting must notify any potential claimant that a *877 claim must be filed within sixty days or the funds will be transferred to the OAUP, where all claims would then have to be made. Ibid. The notice includes the balance on deposit with the Clerk.[6] Apparently, there is no requirement that the State Treasurer or the Clerk of the Court send notice directly to the potential owner or claimant even where the last known address of the owner or potential claimant is known. This raises potential due process issues. See Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L. Ed.2d, 180 (1983). We need not address the issue in resolving this appeal.
Williamson asserts in this appeal only that he seeks information about the balances of accounts maintained by the OAUP that have been transferred by the Clerk. As noted, the State contends that the information Williamson sought was confidential and not subject to public disclosure.
All public records are subject to the Right to Know Law, "[e]xcept as otherwise provided in this act or by any other statute, resolution of either or both houses of the Legislature, executive order of the Governor, rule of court, any Federal law, regulation or order, or by any regulation promulgated under the authority of any statute or executive order of the Governor...." N.J.S.A. 47:1A-2. Under N.J.S.A. 46:30B-76.1, "[a]ny record or information that is deemed confidential under any New Jersey or federal law when in possession of a person shall continue to be confidential when revealed or delivered to the [OAUP] and shall not be considered a public record" for the purposes of the Right to Know Law. Such confidential information may only be revealed to "an apparent owner or an administrator or official of another state for escheat or unclaimed or abandoned property if that other state accords substantially reciprocal privileges to the administrator." N.J.S.A. 46:30B-76.2. Of course, the converse or corollary to confidential information remaining confidential is that information that is not confidential when in the possession of an agent, fiduciary or custodian does not become confidential when it is turned over or because it is turned over to a government official.
The requirement of confidentiality was discussed in Twiss v. State of New Jersey, Dept. of the Treasury, 124 N.J. 461, 591 A.2d 913 (1991). There, the plaintiff was engaged in the business of obtaining the names and addresses of the owners of unclaimed bank accounts, as well as the balances in those accounts as held by the Treasurer, in order to locate potential claimants. Id. at 463, 591 A.2d 913. The Court held in its majority opinion that the account balances were confidential and not subject to public disclosure.
Prior to amending the UUPA in 1989 to include a confidentiality provision,[7] the State Treasurer apparently routinely denied public access to the balances of abandoned bank accounts. Id. at 472-473, 591 A.2d 913. This allowed the State to retain the funds and income therefrom and worked as a disincentive for persons interested, for a commission, in assisting true owners to claim their funds from the Treasurer, because of the expense involved in tracking down claimants of relatively *878 small amounts and the uncertainty of which names had potential for profitable return.
The Twiss opinion said that the legislative history of the UUPA implied that the Legislature intended to "conform the bill to any of the current practices of the State Treasurer." Id. at 473, 591 A.2d 913 (quoting Assembly Statement of Amendments of s. 888 at 23). Furthermore, Twiss deemed significant the fact that State and federal law recognized a bank's obligations to maintain confidentially of records and to not ordinarily disclose them, ibid., to prying third parties. This may be the case at least when the true owner knows the investments of his property. The Right to Financial Privacy Act, 12 U.S.C.A. §§ 3401 to 3422, on the other hand, limits access by a "Governmental authority" to bank accounts, with certain enumerated exceptions. See 12 U.S.C.A. §§ 3402 and 3413. This act appears to have no applicability to inquiries from non-governmental sources.
As to the right of the account holder and third party claimants, our courts have recognized an expectation of confidentiality in financial records. Id. at 474, 591 A.2d 913. Twiss cited Brex v. Smith, 104 N.J. Eq. 386, 146 A. 34 (Ch.1929), a case enjoining the prosecutor, who had not obtained a subpoena, from examining all bank accounts of all members of the Newark Police Department, in part on the ground that banks have an obligation to keep bank records confidential in accordance with a private citizen's expectations that records remain private and are not subject to governmental fishing expeditions without proper authority. In Roth v. First National State Bank, 169 N.J.Super. 280, 404 A.2d 1182 (App.Div.), certif. denied, 81 N.J. 338, 407 A.2d 1212 (1979), we recognized a bank's obligation of confidentiality with respect to customer's financial records in a situation where the actions by a bank employee in relating to another the banking practices of a customer led to a robbery. This action was outside the scope of the bank employee's employment.
Because the UUPA calls for continued confidentiality of records that were already confidential, N.J.S.A. 46:30B-76.1, and bank records are generally considered private information while the account is active and prior to transfer to the OAUP, the majority in Twiss concluded that the balances should not be considered public information and were thus not subject to the Right to Know Law, id. at 475, 591 A.2d 913, even though, as Justice Stein cogently pointed out in a persuasive dissent, this brings about an unfair result when the owner of the funds does not even know that the State Treasurer now has custody of the true owner's funds. 124 N.J. at 477-478, 591 A.2d 913 (Stein, J., dissenting). The State's practice works to the disadvantage of the owner, hindering the owner from being informed of the existence and entitlement to reclaim the funds.
Thus, the authority relied on by the State Treasurer in this case does not support its position as to property held by the Clerk of the Superior Court for ten years or more, that has been deemed abandoned, and turned over for safekeeping to the OAUP. N.J.S.A. 46:30B-76.1 and Twiss apply only to information as to which the unclaimed owner of the property had a privacy interest prior to transfer to the OAUP. The use of the word "continue" in both N.J.S.A. 46:30B-76.1 and Twiss, supra (124 N.J. at 472, 591 A.2d 913), supports that conclusion.
As we observed, it should be obvious that information in court records, including pleadings and orders, are public records available at reasonable times and places for public inspection. The public listing and posting of the cases by the Clerk of the Superior Court constitutes *879 public notice of the funds being transferred to the OAUP discloses the docket number, the case name, and the individual amounts involved in each case. See N.J.S.A. 46:30B-50.1. All of this information is readily derived from court records that are public.
Neither the list as posted by the Clerk of the Superior Court (or by a surrogate) nor the information contained therein lose their public character by virtue of a transfer from one holder, the Clerk of the Superior Court, to another, the OAUP. The holder of the property involved in the underlying litigation either did not have a privacy interest or would have already lost any privacy interest that may have existed in the information as a result of the very institution of judicial proceedings and the further action of some litigant or stakeholder depositing the funds with the Clerk. As noted, the complaint, answer, final order, and any other non-impounded court documents are all public records. Because Williamson could obtain the information he seeks from one source, there is no reason that information, except Social Security numbers, should be deemed confidential.[8] Thus, we conclude that information received by the Treasurer from the Clerk of the Superior Court regarding the transfer of funds on deposit are public records under the Right To Know Law.
N.J.S.A. 46:30B-76 requires the OAUP to record only the names and addresses of the person appearing in the holder's report, and in the case of insurance policies, the number, name of the company and the amount due. Although the OAUP's list fails to include the amount held, the original holder's report would contain this information. This report would have to be kept by the OAUP as a means of maintaining the accounts and verifying information with claimants. Simply stated, because the information in the Clerk's report is not confidential under N.J.S.A. 46:30B-76.1, it is subject to public inspection, either at the office of the Treasurer or the office of the Clerk of the Superior Court, or both. N.J.S.A. 47:1A-2. The fact that the Clerk of the Superior Court, upon proper request and payment for copying costs, may provide copies of the list of presumptively abandoned property, as posted, to members of the public, does not change our conclusions with respect to the requirement that the State Treasurer must make this information available under the Right To Know Law.

II.
The motion judge stated that Williamson is not entitled to free reports over the telephone from the OAUP. The judge need not have addressed this issue because Williamson never actually raised it as an issue in his complaint. Williamson recited factually that he had received telephone reports prior to 1999. His demand only sought that the information he seeks should be made available to him under the Right to Know Law, and did not specify the form of the availability. Although obtaining detailed information over the telephone was not what Williamson sought, we agree with the motion judge that the OAUP need not do extensive research for an inquirer who requests such information by telephone. Of course, routine inquiries by telephone would be expected to receive appropriate handling and resolutions.

III.
Accordingly, as a prevailing party Williamson is entitled to counsel fees not to exceed $500 pursuant to N.J.S.A. 47:1A-4, *880 together with taxed costs. In this case a fee of $500 is appropriate and awarded to Williamson, together with taxed costs.
Reversed and remanded.
NOTES
[1] The Right to Know Law was substantially revised by legislation enacted on January 8, 2002. The effective date is July 7, 2002, 180 days after the date of enactment. P.L. 2001, c. 404. The amendments to this act would not change our conclusions.
[2] The common law right to inspect and examine public records was not superseded by the Right To Know Law. Beck v. Bluestein, 194 N.J.Super. 247, 259, 476 A.2d 842 (App.Div. 1984).
[3] This website is http://www.state.nj.us/treasury/taxation/ unclaimsrch.htm.
[4] He does not seek information from sources alluded to in Twiss v. State of New Jersey, Dept. of the Treasury, 239 N.J.Super. 342, 571 A.2d 333 (App.Div.1990), rev'd 124 N.J. 461, 591 A.2d 913 (1991).
[5] Under the common law, public records are those which are made or kept by public officials in the exercise of public functions. Kuehne Chemical Co., Inc. v. North Jersey Dist. Water Supply Com'n, 300 N.J.Super. 433, 439, 693 A.2d 168 (App.Div.) certif. denied 151 N.J. 466, 700 A.2d 878 (1997). They include all writings made and kept to memorialize what was written, said or done. Id. at 440, 693 A.2d 168. Under the Right to Know Law, public records are those which are:

required by law to be made, maintained or kept on file by any board, body, agency, department, commission or official of the State or any political subdivision thereof or by any public board, body, commission or authority created pursuant to law by the State or any of its political subdivisions, or by any official acting for or on behalf thereof....
[N.J.S.A. 47:1A-2.]
The common law definition of public records is thus broader than under the Right to Know Law. Keddie v. Rutgers, The State University, 148 N.J. 36, 49, 689 A.2d 702 (1997). However, in order to obtain access to public records under the common law, a party must demonstrate an interest in the subject matter of the record. South Jersey Publishing Co., Inc. v. New Jersey Expressway Authority, 124 N.J. 478, 487, 591 A.2d 921 (1991); Kuehne Chemical, supra (300 N.J.Super. at 440, 693 A.2d 168). The interest must then be balanced against the State's interest in preventing disclosure. Ibid. (quoting Higg-A-Rella, Inc. v. County of Essex, 141 N.J. 35, 46, 660 A.2d 1163 (1995)). The common law would not allow Williamson to access the records he seeks from the OAUP, as it is doubtful he could demonstrate a sufficient interest in the subject matter to justify disclosure. However, as the Right to Know Law has no such standing requirement, "other than New Jersey citizenship," Keddie, supra (148 N.J. at 44, 689 A.2d 702) [relying on N.J.S.A. 47:1A-2], Williamson seeks inspection of these records under the Right to Know Law.
[6] The record is somewhat sparse in this appeal and does not indicate whether there is newspaper publication either as to the funds turned over by the Clerk of the Court or indeed any other funds when they are turned over to the OAUP. See N.J.S.A. 46:30B-51 as to property reported by life insurance companies.
[7] L. 1989, c. 58 § 1, eff. April 14, 1989.
[8] Presumably, Social Security information is excluded. See N.J.S.A. 47:1A-5 as amended by L. 2002, c. 404, § 6a once deposited with or transferred to the OAUP.